Good morning, Honors. Howard Hong on behalf of the Petitioner-Circulator Portfolio. Let me take a moment before I start my argument. Late yesterday afternoon, Government Counsel contacted my office and proposed that we send this matter to mediation. And we finalized that I was not a part of that conversation because I was engaged in another matter at Government Counsel this morning. And myself, we advised the court clerk so if the court is amenable to that, move this case off the argument calendar and over to the mediation. So you want to go to Ninth Circuit mediation? Yes, Your Honor. Were you the lawyer for Mr. Bartolo before the immigration judge? It was my law office, the person I was not. Well, it was Attorney Porto who was the one who actually held the hearing. Correct. I just am very, very concerned about the nature of this hearing, both the representation of Mr. Bartolo and the actions of the IJ in terms of due process. And I'm just wondering, I guess, I'm wondering how it was possible that the attorney weighed various rights, grounds for relief and also the voluntary departure, without even consulting with Mr. Bartolo or his mother, given the fact that he is mentally ill. Yes, Your Honor. And that is the problem in the board's recent decision of matters at Mayhem, where the board suggested counsel would be able to participate. But where the client is not able to participate and communicate with his lawyer, the lawyer cannot do his job. He should not have proceeded. He should not have proceeded. And the immigration judge should have sui sponte exercised the immigration judge's authority to continue the hearing until such time as an appropriate psychiatric evaluation was conducted. But why didn't the counsel for Mr. Bartolo request a continuance for that? Why is it on the IJ? I mean, perhaps the IJ, and perhaps an opinion if this case doesn't resolve itself in mediation, an opinion would be written saying that there is an obligation by the IJ to sui sponte, do something to safeguard the due process rights of a mentally ill person. But on the other hand, why didn't his attorney request a continuance? In hindsight, I think he should have. Given the five years since that case was heard, the immigration judge's bench book was updated in late 2009 or early 2010 to suggest that a continuance should have been a proper procedure or perhaps even termination of the proceedings until such time as the alien respondent is competent to participate. But you've raised a broader due process question as to what should be the protections within this kind of hearing in a broader sense. And the government has responded and they've suggested that you haven't made any specific requests to satisfy the due process clause. Are there particular requests? For instance, do you think as a fundamental part of due process that there needs to be a witness present who could essentially testify in the place of this disabled person? Yes, Your Honor. The regulations at ACFR, I don't have the citation in front of me, does provide for an appointment of a guardian at Leiden or to have a near relative or a friend testify on behalf of the alien respondent. But until the alien respondent is in a mental frame of mind to be able to participate in that discussion, we can't proceed. Dr. Myatt, in this case, attempted to proceed and had to abort the evaluation because in his professional opinion, Mr. Bartolo was on the cusp of having a psychiatric crisis. Even a professional could not proceed. And that's why when the immigration judge heard this, Judge Fernandez should have corresponded. He said, let's put this case on hold. Let's go back to another psychiatrist, maybe have someone else who might be more, he's more familiar with. Mr. Bartolo had had psychiatric treatment before, had been diagnosed by people not involved in the immigration proceedings as having paranoid schizophrenia. So I think the immigration judge should have done that. And let me also say that the problem arose so far back. I think this is, in my research, probably the first case of this type. The immigration judge bench vote was updated after that. And presently pending before the Board of Immigration Appeal is a case matter BZ where the BIA requested amicus briefing, and I think there were about five amicus briefs from various organizations, physicians for human rights and other organizations, who are competent. I don't think the immigration judge himself is competent in this case, nor counsel, to make an assessment as to the mental state of mind of Mr. Bartolo. Now, this is Judge Levy in Portland. And I failed to hear you when you said someone had requested mediation. Who made that request? The government lawyer called my office yesterday. All right. All right. Now, I think we have to face up to this, that from all I can tell in this record, the IJ did everything that counsel asked of the IJ. Am I right? Can you point to any place in this record where the IJ failed to do what counsel asked that the IJ do, other than grant relief on the merits? Yes, Your Honor. The immigration judge in this case asked counsel, how do you want to proceed under these circumstances? I think that's improper of the immigration judge to abrogate his responsibility to control the course of the case. No, no. No, no. I want you to focus on my question. What did the immigration judge fail to do that counsel asked be done? That's correct. Counsel did not ask for appropriate relief. What he asked for, the immigration judge gave him. So, Your Honor's correct at that point. I think the answer to my question is nothing. Now, I'm going to ask it again. What did the immigration judge fail to do that counsel asked the immigration judge to do, other than rule in favor of the petitioner on the merits? That's correct, Your Honor. I agree with that description. Well, you agree with the description that there was nothing that the IJ failed to do? As far as what Mr. Porcher requested, that's correct. But as far as the judge's other authority under the … I'm not talking about that. I think I've got an answer to my question, and we can move on from there. Thank you. And if I have to answer it, I answer it by saying nothing. Now, you tell me where that answer is wrong. It's wrong because the immigration judge should have, as the immigration judge, controlled the courts of the tribe. All right, sir. You and I are not communicating, and we'll leave it at that. Now, you say in hindsight, counsel should have done something different. Am I correct? That's correct. Now, this case is fraught with what counsel could have done and in the judgment of many might be what counsel should have done. Would you agree with that? Yes, sir. And you're in no position, either now or in the future, because it's a member of your office who represented this person to claim that there was inadequate representation. Am I correct? No, sir. I would still say that if a member of any law firm was not providing adequate representation, they should be thrown out of that law firm, and Mr. Porto, if I may say, is no longer associated with the firm. Mr. Porto is no longer practicing law, is he? I had checked that about six months ago, and I think about six months ago he was, unless I didn't check it. Well, we understand he was disbarred.  He may have been disbarred, fortunately, since that time. Now, does that mean you're free to raise the issue of inaccurate representation on a petition for reopening or something like that? Maybe, Your Honor, but I think this case poses such a fundamental problem that it's a new issue. Well, I know, but that's still not an answer. I want you to understand that I have this mania for precise responses. Are you in a position to raise that issue? Yes. All right. Now, what do you want us to do today? Well, as government counsel has suggested, if we send this back to the mediator's office, we could perhaps work with the mediator's office, work with the Board of Immigration accused, and have this case on hold until the Board issues its decision on whether to reopen. Harry, would you be – so you say it was the government who suggested the mediation? Yes. Would it be okay with you, Judge Lee, if we asked the government to speak at this time? Yes, fine. Okay. Thank you, Your Honor. Thank you. Ms. Paras-Gondola. Good morning. May it please the Court, Christina Paras-Gondola for the government. Just to start out, I mean, we feel that the decision is defensible as far as due process, and it's just a matter of law. There really was no relief available to Mr. Bartolo. And in looking over this case again, it does present some very compelling factors that would warrant an exercise of discretion in the execution of that removal order. And as you know, if you're familiar with immigration law, that's up to the Department of Homeland Security. And we understand – you understand that the Morton memo, that gives you discretion to enter into mediation and perhaps agree to do a motion to reopen in this particular case. He seems to fit the factors set forth in the Morton memo. Your Honor, I'd have to get back to you on that. I was not aware that Mr. Porto was disbarred or that there was an issue of ineffective assistance. Oh. But we'll hopefully go through that in mediation. And obviously I can't guarantee any outcome in that. Just to set the record a little clearer, he was disbarred for failing to provide adequate representation, not in this particular case, but in other cases as well, as I – at least that was represented in one of the pleadings at some particular place. But I just wonder whether under the changes in the regulations to date, that we could be assured that in cases like this, with disabled individuals who cannot communicate with their lawyers, cannot testify, cannot waive his request for voluntary deportation, that there is some mechanism to assure that there will be people advocating for that person in the hearing. Because this is somewhat shocking, it seems to me, that there were not those kinds of protections. The way the regulation is drafted, it's 8 CFR 1240.4, basically states that an alien who is incompetent doesn't have to testify and that his attorney or another representative, I think, or a friend or family member can appear for the alien. And I think that's it. Now, on one hand, that provides the immigration judge with a lot of flexibility, because, I mean, these cases are not all alike. There are so many different situations, so you can't have like a one-size-fits-all rule. In addition to that, the board issued a precedential decision in May that provides some additional safeguards. The immigration judge has to make a finding of whether the alien is incompetent. And those things, I think, were complied with here, even though that board decision came out several years later. Well, if there is a determination that the person is incompetent, is there then a requirement that there be someone not ñ I mean, just can be there, but there should be somebody in that person's place to advocate for that person, because in this particular situation, there clearly was not. Your Honor, there is no such requirement now. You may be aware that there is a class action suit pending in the central district of California. It's called Franco Gonzales against the government, and I believe the relief they're asking for is for more ñ for these kinds of safeguards. However, that class includes aliens who are pro se and who are in detention. And, you know, that's still pending. Well, I think you can see that this ñ and I'm not sure that I would agree with you that all the procedural safeguards in the ñ what is it, the precedential decision in ñ MAM. MAM, which was submitted to us in a 28-day letter. I'm not sure I would agree with you that all the procedural safeguards in that case were complied with here. But this case is obviously troublesome from a variety of aspects, and what we will do is the three judges will discuss how we handle this in conference. I won't submit it right now, but we'll discuss how we should proceed. Just ñ if I'm ñ you know, I just want to be clear now. What I hear you saying on behalf of the Attorney General is that you join with counsel in suggesting that we delay submission of this case on the merits, withhold submission on the merits, and allow a time for mediation. Is that what you're asking along with counsel? Yes, it is. And would you anticipate that if mediation fails, that there would be a need for further argument, or would you consent to the court deciding it on the record, on your briefs? I don't ñ wow, that calls for some speculation on my part. I don't know. I don't know the outcome of, you know, what would happen with mediation. I know, but in the event it fails, in the event that mediation fails, if you will, at least no resolution is achieved, how would you suggest we proceed with the case? Decide it on the record, or are you asking a chance to be heard in oral argument? I see. At this point, I mean, we were prepared to go forward with oral argument, so I would have to respond that we would ask for it to go forward with argument. I'm not sure I'm understanding your question exactly. Actually, what he's asking is, should it fail, would you then ask to be put back on the oral argument calendar? Yes. All right. That's fine. That's fine. I just wanted to be sure I understood your position, and in conference we'll consider all that. Right. And also, just one more question. So how we would proceed is direct you to mediation before the Ninth Circuit mediator, and that's what you understand? Yes, we were asking that the court place this in Ninth Circuit mediation. All right. All right. Well, thank you, counsel, and we will defer submission of this case at this time. United States v. Valdez has been submitted on the briefs. The next case is Sarmiento v. Orange County.
judges: Sessions, Leavy, Wardlaw